# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| AETNA INC. and AETNA LIFE INSURANCE CO., <br><br> Plaintiffs, <br><br> v. <br><br> OPEN MRI AND IMAGING OF RP, P.A.; VESTIBULA DIAGNOSTICS, P.A. d/b/a VESTIBULAR DIAGNOSTICS, P.A.; UNIVERSAL WELLNESS MEDICAL, INC.; INTEGRATED WELLNESS MEDICINE, LLC; ST. IRENE REALTY CORP.; STEPHEN J. CONTE, D.O.; EUGENE DESIMONE, M.D.; SALVATORE CONTE, M.D.; RAYMOND REITER, M.D.; DONEY JAIN, M.D.; GEORGE HERMANN, M.D.;; COLIN A. PEMBERTON, M.D.; JOHN DOES 1-100; and ABC CORPS. 1-100, <br><br> Defendants. | Civil Action No.____ <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiffs, Aetna Inc. and Aetna Life Insurance Company (collectively, "Aetna"), by way of this Complaint against Defendants Open MRI and Imaging of Rochelle Park, P.A. ("Open MRI"), Vestibula Diagnostics, P.A. d/b/a Vestibular Diagnostics, P.A. ("Vestibular"), Universal Wellness Medical, Inc. ("Universal"), Integrated Wellness Medicine, LLC ("Integrated Wellness"), St. Irene Realty Corp. ("St. Irene"), Stephen J. Conte, D.O. ("Dr. Stephen Conte"), Eugene DeSimone, M.D. ("Dr. DeSimone"), Salvatore Conte, M.D. ("Dr. Salvatore Conte"),  Raymond

Reiter, M.D. ("Dr. Reiter"), Doney Jain, M.D. ("Dr. Jain"), George Hermann, M.D. ("Dr. Hermann"), Colin A. Pemberton, M.D. ("Dr. Pemberton," and collectively with Doctors Stephen Conte, DeSimone, Salvatore Conte, Reiter, Jain, and Hermann, the "Doctor Defendants"),[1] John Does 1-100, and ABC CORPS. 1-100, allege as follows:

## **INTRODUCTION**

1. Aetna brings this action to redress Defendants' fraudulent schemes to enrich themselves off the COVID-19 pandemic.

2. In the Spring of 2020, the deadly COVID-19 virus quickly spread throughout the population and overwhelmed healthcare providers. In response, an overwhelming majority of healthcare professionals performed heroically.

3. Defendants, in contrast, sought to fraudulently profit off the pandemic by, *inter alia*, providing unlicensed services, billing for medical services that did not occur, and inflating charges for routine evaluation and management services through a fraudulent billing technique known as upcoding.[2]

4. These fraudulent schemes were led by Dr. DeSimone and Dr. Salvatore Conte, both of whom have had their medical licenses suspended as a result of prior

---

[1] All named Defendants are referred to collectively as "Defendants."

[2] Horizon Blue Cross Blue Shield has brought similar claims against Defendants in this Court in Case No. 2:21-cv-10991-WJM-MF, captioned *Open MRI and Imaging of RP Vestibular Diagnostics, P.A. v. Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey*.

convictions for healthcare fraud. When the pandemic hit, these two doctors transformed Open MRI and Vestibular from radiology laboratories to facilities for the administration of rapid COVID-19 tests. From there, Defendants engaged in fraudulent conduct on numerous fronts.

5.      For example, Defendants claimed to have performed high-level evaluation and management consultations for each and every patient who received a simple rapid COVID-19 test. Rapid COVID-19 tests were administered during short encounters with Aetna members (among others), during which a member received a nasal or oral swab after answering a prescreening questionnaire. These encounters – which lasted a few minutes, at most – do not comprise "high level" evaluation and management, but Defendants decided to bill as if they were, in an effort to receive more money.

6.      In addition, Defendants Open MRI, Vestibular, and Universal claimed to have transmitted the tests to a laboratory for testing, notwithstanding that rapid COVID-19 tests are "point of care" tests that do not require transmission to a laboratory.

7.      Recognizing that their conduct was unlawful, Defendants attempted to avoid raising red flags by creating Universal and Integrated Wellness in order to spread their charges across multiple entities, going as far as submitting backdated bills for services that predated Universal's formation.

8.     If that were not enough (it is), Defendants falsely certified that they were properly licensed when, in fact, Open MRI, Vestibular, and Universal were not licensed to render rapid COVID-19 tests as required under the Clinical Laboratory Improvements Act of 1988 ("CLIA").

9.     Aetna brings this action to hold Defendants accountable for their misconduct and seeks compensatory damages, punitive damages, treble damages, attorneys' fees, and costs.

## THE PARTIES

**A.     Aetna**

10.     Aetna, Inc. is a corporation organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

11.     Aetna Life Insurance Company is a corporation organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

12.     Aetna, either directly or through its affiliates, administers or insures various health care benefit plans for members across the country, including in New Jersey.  Aetna meets the definition of an insurance company under the New Jersey Insurance Fraud Prevention Act.  N.J.S.A. 17:33A-1 to -30, and paid health insurance claims as a result of, and in reliance upon, the insurance claims submitted,

or caused to be submitted, by Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants.

### B.    Defendants

13.    Open MRI is a domestic New Jersey professional association with its principal place of business located at 251 Rochelle Avenue, Rochelle Park, New Jersey. Open MRI's National Provider Identification ("NPI") number is 1619923679. Dr. Stephen Conte was, and continues to be, the Registered Agent and President of Open MRI.

14.    Vestibular is a domestic New Jersey professional association with the same principal place of business as Open MRI. Vestibular's NPI number is 1366671695. Dr. Stephen Conte was, and continues to be, the Registered Agent and founder of Vestibular.

15.    Universal is a domestic New Jersey corporation with the same principal place of business as Open MRI and Vestibular. Universal's NPI number is 1285248179. Dr. Stephen Conte was a principal and member of Universal's first Board of Directors.

16.    Dr. Stephen Conte is a Doctor of Osteopathic Medicine licensed to practice in the State of New Jersey with a home address located in Paramus, New Jersey. Dr. Stephen Conte's NPI number is 1750329900. Dr. Conte rendered services at Open MRI, Vestibular, and Universal. The corporate paperwork also lists

Dr. Conte as the owner of these three entities, in addition to St. Irene.

17.    Dr. DeSimone is a Medical Doctor licensed to practice in the State of New Jersey with a home address located in Ocean Township, New Jersey. Dr. DeSimone's NPI number is 1427098268. Dr. DeSimone rendered services at Vestibular and Universal.  He previously pled guilty to accepting bribes from a medical laboratory in exchange for referrals of blood tests that were then billed to Medicare or private payors, which resulted in a 37-month prison sentence and financial penalties.

18.    Dr. Salvatore Conte is a Medical Doctor licensed to practice in the State of New Jersey with a home address located in Totowa, New Jersey. Dr. Salvatore Conte's NPI number is 1174688493. Dr. Salvatore Conte was identified as the "rendering provider" on false and fraudulent claims for services rendered to Aetna's members at Vestibular, Universal, and Integrated Wellness.

19.    Dr. Reiter is a Medical Doctor licensed to practice in the State of New Jersey with a home address located in Franklin Lakes, New Jersey. Dr. Reiter's NPI number is 1841447380.  Dr. Reiter was identified as the "rendering provider" on false and fraudulent claims for services rendered to Aetna's members at Vestibular and Integrated Wellness.

20.    Dr. Jain is a Medical Doctor licensed to practice in the State of New Jersey with a home address located in Morris Plains, New Jersey. Dr. Jain's NPI

number is 1720484777.  Dr. Jain was identified as the "rendering provider" on false and fraudulent claims for services rendered to Aetna's members at Vestibular and Universal.

21.    Dr. Pemberton is a Medical Doctor licensed to practice in the State of New Jersey with a home address located 17167 Three Oaks Parkway, Unit 1401, Fort Meyers, FL 33967-5379. Dr. Pemberton's NPI number is 1891935557. Dr. Pemberton was identified as the "rendering provider" on false and fraudulent claims for services rendered to Aetna's members at Vestibular.

22.    Dr. Hermann is a medical doctor licensed to practice in the State of New Jersey with a home address located in Saddle Brook, New Jersey. Dr. Hermann's NPI number is 1619036738. Dr. Hermann was identified as the "rendering provider" on false and fraudulent claims for services rendered to Aetna's members at Vestibular and Integrated Wellness.

23.    Integrated Wellness is a domestic New Jersey limited liability company with its principal place of business located in Clifton, New Jersey. Integrated Wellness's NPI number is 1427661529.  Integrated Wellness was formed by Dr. Salvatore Conte and Dr. Reiter on July 27, 2020.

24.    Upon information and belief, at all times material hereto, Dr. Salvatore Conte and Dr. Reiter have been members and principals of Integrated Wellness.

25.    St. Irene is a domestic New Jersey corporation with the same principal

place of business as Dr. Stephen Conte's home address in Paramus, New Jersey.

26.     At all times material hereto, Dr. Stephen Conte owned and operated St. Irene. Dr. Stephen Conte served as St. Irene's Registered Agent with his wife, Patricia Conte, serving as the entity's President. St. Irene is the record owner of 251 Rochelle Avenue, the practice location of Open MRI, Vestibular, and Universal, which served as the hub of the fraudulent conspiracy orchestrated by Defendants and described herein.

### C.     Defendants' Prior Convictions for Healthcare Fraud and Other Legal Issues.

27.     As referenced above, two of the doctors at the helm of Defendants' fraudulent scheme have previously been convicted of fraud-related crimes.

28.     Dr. Desimone previously pled guilty to accepting bribes from a medical laboratory in exchange for referrals of blood tests that were then billed to Medicare and private payors.  He was sentenced to 37 months in prison and ordered to pay financial penalties.[3]

29.     In 2017, Dr. Salvatore Conte pled guilty[4] to accepting approximately

---

[3] *See* Department of Justice Press Release, *Two Doctors Each Sentenced to 37 Months in Prison for Taking Bribes in Test-Referrals Scheme with New Jersey Clinical Lab*, May 5, 2015, *available at* https://www.justice.gov/usao-nj/pr/two-doctors-each-sentenced-37-months-prison-taking-bribes-test-referrals- scheme-new.

[4] *See* Department of Justice Press Release, *Passaic County, New Jersey, Doctor Pleads Guilty in Connection with Test-Referral Scheme With New Jersey Clinical Lab*, February 27, 2017, *available at* https://www.justice.gov/usao-nj/pr/passaic-county-new-jersey-doctor-pleads-guilty-connection-test-referral- scheme-new-jersey.

$100,000 in bribes from the same medical laboratory as Dr. DeSimone in exchange for his referral of patient blood specimens for testing that were then billed to Medicare and private payors. Dr. Salvatore Conte was sentenced to three years of probation and was ordered to pay a $50,000 fine.

30.     The New Jersey Board of Medical Examiners (the "Board") has suspended Dr. Pemberton's medical license  multiple times in recent years as a result of numerous positive tests for THC, cocaine, and alcohol in violation of agreements with the Board and the Professional Assistance Program of New Jersey. A true and accurate copy of the New Jersey Board of Medical Examiners' October 8, 2019 Order of Automatic Suspension of License is attached hereto as Exhibit "A."

## **JURISDICTION AND VENUE**

31.     This Court has jurisdiction over Defendants and this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Aetna and Defendants, and because the amount in controversy between Aetna and Defendants exceeds $75,000.00, exclusive of interest and costs.

32.     Venue is appropriate because the complained of acts, including the services and fraudulent billing, occurred in this District.

## FACTS

**A.    Aetna Relies upon Providers like Defendants to Submit Accurate Information in Adjudicating Claims.**

33.    Aetna administers and/or insures healthcare benefits for medical services lawfully rendered by eligible providers to its members pursuant to the terms of health benefit plans issued to individuals and employers throughout the United States and New Jersey specifically.

34.    To obtain payment for services they render, healthcare providers like Defendants submit health insurance claims by completing standard billing forms (*i.e.*, CMS 1500 or HCFA forms).  Per Federal law, these forms require providers to use numerical codes that describe the services for which the provider seeks payment as maintained by the American Medical Association's Current Procedural Terminology ("CPT") and the CMS Healthcare Common Procedure Coding System ("HCPCS").  *See* 45 C.F.R. §§ 162.1002(a)(5), (b)(1), & (c)(1).  An example of a CMS 1500 claim form is attached hereto as Exhibit "B."

35.    Aetna relies upon providers to submit accurate information and make truthful representations on claim forms in order to determine whether a service is covered and, if so, the amount of payment.  Aetna specifically relies upon providers to input the CPT or HCPCS codes that accurately describe the services provided in accordance with applicable standards and guidance.

36.    Providers like Defendants intend for Aetna to rely upon the CPT and

HCPCS codes contained within a claim form when determining payment for services.

37.     Applicable laws, the claim forms themselves, and Aetna require that all claim submissions be certified as correct and complete and that the benefits being claimed be limited to charges actually incurred.  *See* Ex. B.  This includes the New Jersey Insurance Fraud Prevention Act (the "IFPA"), which requires providers to certify their knowledge that "[a]ny person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties." N.J.S.A. 17:33A-6(a).

38.     In submitting a claim to Aetna, or any other health insurer in New Jersey, a provider certifies that he or she is appropriately licensed and credentialed to legally render, and personally rendered, the services being billed.

**B.     The COVID-19 Pandemic and the Federal Government's Response.**

39.     The onset of the pandemic brought with it an urgent need to test individuals for COVID-19.   As a result, Congress passed the Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127 on March 18, 2020. Broadly speaking, the FFCRA required health plans and insurers to cover COVID-19 tests and testing in certain qualifying situations.  Insurers and health plans were also prohibited from imposing any cost-sharing (*i.e.*, deductibles, copayments, and coinsurance), prior authorization requirements, or other traditional means used to

control and/or lessen healthcare costs.  The prohibition extended to both COVID- 19 test services, and any other items or services furnished to an individual during healthcare provider office visits that related to the test administration or the need to evaluate patients to determine the need for a test.

40.     On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136. Section 3203 of the CARES Act ensures that "group health plans" and "health insurance issuers" provide coverage for "any qualifying coronavirus preventive service."[5]

41.     In short, the FFCRA and the CARES Act were enacted to ensure insurance reimbursement for qualified COVID-19 testing and related services.

42.     To ensure accurate billing and prevent exploitation by providers, the Federal Government, through the Centers for Medicare and Medicaid Services (CMS), issued billing guidance that specifically instructed providers on appropriate billing practices for these types of services.

43.     Defendants ignored this guidance and generally accepted billing standards, and instead weaponized the aforementioned legislation for profit at the expense of Aetna, its members, plan sponsors, and the healthcare industry at large.

---

[5] There are situations where the FFCRA and CARES Act do not require insurers to cover COVID-19 testing, such as testing for public health surveillance, workplace testing, or other related testing.

C.      **Open MRI and Vestibular Pivot to Financially Capitalize upon the Pandemic by Offering COVID Testing.**

44.      At the outset of the pandemic, Open MRI and Vestibular went from operating exclusively as a radiology laboratory to a provider of rapid COVID-19 tests, which they offered at their joint practice location at 251 Rochelle Avenue, Rochelle Park, New Jersey.

45.      The process of receiving a rapid COVID-19 test at Open MRI and/or Vestibular was short and simple.  A patient would have their temperature taken, answer a series of screening questions regarding their symptoms, and receive a nasal swab.  The results were provided shortly thereafter.

46.      These appointments lasted no more than a few minutes and involved minimal interaction with a physician.  The quick process and turnaround time is why the tests were considered "***rapid***" in nature.

47.      Open MRI and/or Vestibular charged patients $35 for a rapid COVID-19 test and then also submitted significantly higher charges to Aetna.  These charges were clearly inflated.

48.      As detailed further below, Defendants falsely inflated their charges by misrepresenting that they performed specimen handling services as part of the test-administration.  Rapid COVID-19 tests do ***not*** call for such services because they are "point of care" tests where the nasal swab, specimen analysis, and test results are administered at the same location.  Specimen handling services are appropriate only

for polymerase chain reaction ("PCR") COVID-19 tests which require samples to be transported to a laboratory for analysis.

49.     Defendants also consistently misrepresented the types of evaluation and management services they provided by upcoding the CPT codes associated with those services on bills submitted to Aetna.

**D.     New Jersey's Department of Health Cites Open MRI For Failure to Implement Appropriate COVID-19 Safety Protocols and Issues an Emergency Closure Order.**

50.     Beyond the inflated charges, the services that Defendants offered were subpar.  For example, the New Jersey Department of Health cited Open MRI for failing to implement adequate infection control procedures at its practice location where it was conducting COVID-19 testing.

51.     In addition, on November 25, 2020, the Department of Health issued Open MRI an "Emergency Closure Order" for failing to implement appropriate COVID-19 screening and safeguards, and failing to disinfect equipment used to test one of the more contagious diseases in recent memory.

**E.     Defendants' Four Fraudulent Schemes.**

*i.      Unlawful Billing For Rapid COVID-19 Tests Rendered Without the Required Licenses and Certifications.*

52.     As noted above, Defendants provided "rapid" COVID-19 tests, which the FDA approved pursuant to an "Emergency Use Authorization."

53.     To ensure safety, the EUA for rapid COVID tests was limited to

"authorized laboratories." In other words, only "authorized laboratories" could provide such tests.

54. "Authorized laboratories" must possess either a CLIA Certificate of Waiver, Certificate of Compliance, or Certificate of Accreditation in order to lawfully render and bill for testing.

55. As explained by the Centers for Disease Control and Prevention ("CDC"), "CLIA requires that any facility examining human specimens for diagnosis, prevention, treatment of a disease or for assessment of health must register with the Federal Centers for Medicare & Medicaid Services (CMS) and obtain CLIA certification." CDC, *How to Obtain a Clinical Laboratory Improvement Amendments (CLIA) Certificate of Waiver*, available at: https://www.cdc.gov/hiv/testing/nonclinical/clia.html. (last viewed on November 17, 2021)

56. Defendants submitted claim forms to Aetna for rapid COVID-19 tests in which they represented that they had all the requisite certifications and licenses necessary to perform such tests. *See, e.g.,* Exhibit "B" (sample CMS 1500 claim form showing the certifications made on every claim form Vestibular submitted).

57. However, from April 2020 through at least September 22, 2020, Vestibular was not appropriately credentialed to render rapid COVID-19 tests pursuant to a CLIA certificate. *See* Vestibular's CLIA Laboratory Details Report

attached hereto as Exhibit "D."

58.     During this time, Vestibular billed Aetna over $65,000.00 for COVID-19 testing and related services. A true and accurate copy of Aetna's claims data, which is kept and maintained in the ordinary course of its business, is attached hereto as Exhibit "E" and depicts each claim submitted by Vestibular and paid by Aetna from April 2020 through September 22, 2020.

59.     Upon information and belief, Open MRI failed to obtain the appropriate CLIA credentials during the entire time it billed Aetna for COVID-19 testing and related services. *See, e.g., CDC CLIA Laboratory Search site*, available at https://www.cdc.gov/clia/LabSearch.html. (last viewed on November 17, 2021)

60.     During this time, Open MRI billed Aetna over $6,000.00 for COVID-19 testing and related services. A true and accurate copy of Aetna's claims data, which is kept and maintained in the ordinary course of its business, is attached hereto as Exhibit "F" and depicts each claim submitted by Open MRI and paid by Aetna from April 2020 through May 2021.

61.     Similarly, from July 2020 through at least November 8, 2020, Universal was not appropriately credentialed to render rapid COVID-19 tests pursuant to a CLIA certificate. *See* Universal CLIA Certificate of Waiver attached hereto as Exhibit "G."

62.     During this time, Universal billed Aetna at least once for COVID-19

testing and related services. A true and accurate copy of Aetna's claims data, which is kept and maintained in the ordinary course of its business, is attached hereto as Exhibit "H" and depicts a claim submitted by Universal and paid by Aetna for services rendered on October 23, 2020.

63.     Open MRI, Vestibular, and Universal collectively identified the Doctor Defendants as the "Rendering Providers" of these unlawful services.

*ii.     Billing for Specimen Handling Services Not Rendered.*

64.     As referenced above, rapid COVID-19 tests (CPT 86328 and 87426) are "***point of care***" tests, which means that the test is performed in the office without the need to send the specimen to a laboratory.

65.     Beyond charging for the rapid COVID-19 test codes (CPT 86328 and 87426) they were not certified to give, Open MRI, Vestibular, and the Doctor Defendants also billed for "specimen handling" services denoted by CPT Codes 99000 and 99001.[6]

66.     This was a fraudulent misrepresentation because specimen handling – which involves the handling of test samples for transfer to a laboratory – is neither required nor necessary for "point of care" tests.

67.     To the contrary, the absence of "specimen handling" is what

---

[6] CPT 99000 denotes handling or conveying for a transfer from a physician's office to a laboratory, while 99001 denotes the same service but where the transfer is from "other than an office" to a laboratory.

differentiates a *rapid* COVID-19 test from a PCR COVID-19 test. The latter is transferred to a lab, while the former is not, and gives a "rapid" result at the place of testing.

68.     Despite the fact that COVID-19 rapid tests do not involve "specimen handling" transfers at all, Open MRI, Vestibular, and Doctor Defendants nevertheless billed "specimen handling" services for *every rapid COVID-19 test they performed* and received thousands of dollars in claims' payments from Aetna for services *they did not perform*. A true and accurate copy of Aetna's claims data, which is kept and maintained in the ordinary course of its business, is attached hereto as Exhibit "I" and depicts that each claim submitted by Open MRI, Vestibular, and Universal included billing for "specimen handling" services for every rapid COVID-19 test they performed.

   *iii.     Upcoding Evaluation and Management Service.*

69.     Based upon Aetna's investigation to date, every time Open MRI, Vestibular, and/or Doctor Defendants submitted a claim to Aetna seeking payment for a rapid COVID-19 test described by CPT codes 86328 or 87426, they also billed for moderate and high-level evaluation and management ("E&M") services.

70.     E&M services are denoted by CPT Code 99201, 99202, 99203, 99204, and 99205 for new patients and CPT Code 99211, 99212, 99213, 99214, and 99215 for established patients.  The last numbers in the codes differentiate the level of care

and seriousness of the E&M services, with 1 being the lowest level and 5 being the highest.

71.     For E&M services provided in conjunction with rapid COVID-19 tests, guidance from the American Medical Association, and generally accepted industry practices, instructed providers to bill 99201-99202 for new patients or 99211-99212 for established patients.

72.     Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants did not bill E&M using the lowest-level codes (CPT 99201 or 99211), or even the second-lowest codes (CPT 99202 or 99212). Instead, they regularly billed for these services using CPT 99203, 99204, and 99205 (the highest code) for new patients and CPT 99213, CPT 99214, and CPT 99215 (the highest code) for established patients.

73.     Exhibit C – a sample claim form submitted by Vestibular – provides an example of Defendants' false billing for specimen handling and upcoding.[7]  As that form shows, Vestibular sought $890 from Aetna for performing: (1) a rapid COVID-19 test described by CPT 87426 ($175 charge); (2) a high-level E&M consultation described by CPT 99215 ($475 charge); and (3) "handling" the patient's specimen for a transfer to a laboratory for additional testing that never occurred ($150 charge).

---

[7] The back of CMS 1500 forms contain certifications and are all the same.  Exhibit B contains a sample form showing the back of a CMS 1500 form, and the remaining sample claim forms just show the front of the form.

Remarkably, Vestibular and Dr. DeSimone responded "No" to the prompt in Box 20 asking if a specimen was being sent to an "outside lab," essentially admitting that a charge for 99001 was improper.

74.    Defendants fraudulently used these higher codes because they had higher reimbursement rates.

75.    Collectively, Aetna overpaid Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants in excess of $500,000.00 in reliance upon their false and fraudulent claims misrepresenting the performance of moderate and high-level E&M services.

  iv.    *Formation of Universal and Integrated Wellness to Avoid Aetna's Fraud Detection.*

76.    Defendants knew their conduct was unlawful and took egregious steps to conceal it.

77.    By way of background, healthcare payers like Aetna have devoted investigatory units designed to catch healthcare fraud.  These units rely heavily upon claims data, and one of the most common signs of healthcare fraud comes in the form of data spikes and data irregularities which are often a result of higher-than-normal claims for a given service.  Certain levels of submitted claims can also signal to the investigatory units the need to conduct further investigations.

78.    Therefore, to avoid triggering fraud-detection systems, fraudsters need to suppress the total billings associated with any one particular Taxpayer

Identification Number ("TIN"), which is the unique identifier that payers use to identify the provider submitting a claim. Each provider has a unique TIN.

79.    That is exactly what Defendants attempted to do here by creating two new entities, each with their own TIN.

80.    Specifically, on July 27, 2020, Dr. Salvatore Conte and Dr. Reiter formed Integrated Wellness to render rapid COVID-19 tests in Clifton, New Jersey.

81.    On August 3, 2020, Dr. Stephen Conte incorporated Universal with the same principal place of business as Open MRI and Vestibular. A true and accurate copy of the New Jersey Department of Treasury Business Search records for Universal is attached hereto as Exhibit J.

82.    Universal and Integrated Wellness, with the knowledge and active participation of Dr. Stephen Conte and Dr. Jain, then began submitting claims under their own tax identification numbers ("TIN") rather than those of Vestibular or Open MRI, even though, in the case of Universal, the practice location was the same as Vestibular. This was clearly an attempt to spread billings across multiple TINs to circumvent Aetna's fraud detection systems.

83.    Universal's and Integrated Wellness' billing practices mirrored the fraudulent billing practices of Open MRI and Vestibular discussed above.

84.    Moreover, beginning on or about May 17, 2020, Universal submitted backdated and knowingly false and fraudulent claims to Aetna seeking payment for

rapid COVID-19 tests in conjunction with specimen handling and moderate and high-level evaluation and management services.

85.    By way of example, Universal submitted a backdated claim to Aetna seeking payment for a rapid COVID-19 test and specimen handling allegedly performed on May 17, 2020, nearly three months ***before*** Universal came into existence on August 3, 2020. (A true and accurate copy of Aetna's claims data, which is kept and maintained in the ordinary course of its business, is attached hereto as Exhibit "K" and depicts the claims submitted by Universal, with Dr. Jain identified as the "Rendering Provider").

86.    Collectively, Aetna paid  Universal, Dr. Stephen Conte, and Dr. Jain thousands of dollars in connection with backdated claims for services rendered prior to Universal's incorporation on August 3, 2020.  *Id.*

**F.    Dr. Hermann Admits Defendants Engaged in Fraud.**

87.    On or around August 30, 2021, Dr. Hermann mailed a letter to counsel for Horizon Healthcare Services, Inc., counter-claim plaintiff in the case captioned *Open MRI and Imaging of RP Vestibular Diagnostics, P.A. v. Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey*, No. 2:21-cv-10991-WJM-MF, discussed *supra* n.2.

88.    In that letter, Dr. Hermann makes numerous revelations, including an admission that Vestibular fraudulently overbilled for COVID-19 testing. *See* Letter

of George Hermann, M.D., attached hereto as Exhibit L.

89.     Dr. Herman also alleges that he never performed any COVID-19 testing at Vestibular, but rather, due to his old age, worked at Vestibular part-time conducting NCV/EMG Nerve Studies. *Id.*  Despite this, a number of bills were submitted by Dr. Hermann representing that he had performed these tests.

90.     Dr. Hermann goes on to allege that he ceased working for Vestibular upon discovering that Vestibular was owned solely by Stephen Conte Jr., who is not a licensed medical doctor, and that his father, Dr. Stephen Conte, had no ownership interest in Vestibular. *Id.*

91.     Pursuant to N.J.A.C. 13:35-6.16, it is unlawful for an individual who is not licensed to practice medicine in the State of New Jersey or elsewhere to own and operate a medical practice such as Vestibular.

92.     Aetna has recently discovered that Stephen Conte Jr. is engaged in personal bankruptcy proceedings and that Vestibular is actively dissipating its assets by transferring funds to Mr. Conte Jr. to pay his personal creditors.  *See In re Stephen J. Conte, Jr.*, No. 18-29278 (JKS) (D.N.J.) (the "Conte Jr. Bankruptcy Proceeding"). Vestibular is well aware that its fraud has been uncovered by Aetna and other payers – as evidenced by the Horizon suit – and is clearly trying to fraudulently transfer its assets.

93.     If Dr. Hermann's contentions regarding Stephen Conte Jr.'s ownership

are true, then all of Vestibular's services – COVID-related or otherwise – would be unlawful under N.J.A.C. 13:35-6.16 and would render, most, if not all, of the claims paid by Aetna to Vestibular fraudulent.[8]

## COUNT ONE
### INSURANCE FRAUD BY OPEN MRI, VESTIBULAR, UNIVERSAL, INTEGRATED WELLNESS, AND DOCTOR DEFENDANTS

94.     Aetna repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 93 of this Complaint

95.     Beginning April 2020, Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants entered into a scheme to defraud Aetna through the submission of false insurance claims in violation of the IFPA, N.J.S.A. 17:33A-1 to -30.

96.     Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants are persons or practitioners within the meaning of the IFPA.

97.     At all times material hereto, Aetna was an insurance company within the meaning of the IFPA.

98.     From April 2020 through November 2020, in violation of the IFPA, Open MRI, Vestibular, and Universal unlawfully performed rapid COVID-19 tests

---

[8] Discovery is needed to determine when or if Conte Jr. took ownership and/or control of Vestibular.  Given that Vestibular is actively transferring its assets to Conte Jr. to avoid a judgment for its fraud, Aetna intends to seek expedited discovery on this issue and thereafter move to preliminarily enjoin the transfer of funds between the two entities.  Aetna reserves the right to amend its Complaint to add a claim for damages arising from non-COVID related services billed by Vestibular should it be found that Conte Jr. actually did own and/or control Vestibular.

without required CLIA licenses and collectively received payments from Aetna for these unlawful services. Excluding the amounts for specimen handling services described by CPT 99000 and/or 99001 and amounts for inflated billing for moderate and high-level E & M services, Aetna paid in excess of $71,805.43.

99.     Since at least April 2020, Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants knowingly and intentionally submitted and received payment from Aetna for specimen handling services described by CPT 99000 and/or 99001 which were not rendered, and collectively received payments from Aetna for over $13,500.00 for these unlawful services.

100.    Since at least April 2020, Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants knowingly and intentionally submitted upcoded claims falsely claiming they provided moderate or high-level evaluation and management services, which resulted in unlawfully inflated payments from Aetna of over $500,000.00.[9]

101.    On July 27 and August 3, 2020, Dr. Salvatore Conte and Dr. Reiter formed Integrated Wellness and Universal for the sole purpose of spreading billings across multiple different entities in order to circumvent Aetna's fraud detection

---

[9] The $500,000.00 referenced in regards to upcoding represents the difference between what Aetna actually paid and what Defendants would be entitled to under the lower-level codes that should have been billed.   In other words, the total amount paid by Aetna for upcoded claims is far higher than $500,000.00.

systems and to submit backdated billing in violation of the IFPA. Universal received payments from Aetna for over $10,000.00 for backdated bills.

102.   Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants submitted false and fraudulent claim forms with the intent that Aetna rely upon the false information therein to approve payment.

103.   Aetna paid Defendants as a result of its reasonable reliance upon the misrepresentations in the false health insurance claims submitted by Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants to Aetna.

104.   As a result of the scheme to defraud and the pattern of IFPA violations by Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants, Aetna has suffered damages including, but not limited to, the amounts paid by Aetna as a result of the submission of false and fraudulent claims for reimbursement in excess of $580,000.00, costs of investigation, costs of suit, attorneys' fees, and treble damages under the IFPA. *See* N.J.S.A. 17:33A-7.

**WHEREFORE**, Aetna demands judgment in its favor and against Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants jointly and severally, for all its damages, including all money paid as a result of Defendants' fraud, costs of suit, attorneys' fees, and costs of investigation, for treble damages under the IFPA, a preliminarily injunction to enjoin Vestibular from making any further transfers to Mr. Conte Jr. during the pendency of this action, and for such

other relief as the Court may determine.

## COUNT TWO
## AIDING AND ABETTING THE COMMISSION OF
## INSURANCE FRAUD BY ST. IRENE

105.   Aetna repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 104 of this Complaint.

106.   Upon information and belief, St. Irene was owned and operated Dr. Stephen Conte and his wife, Patricia Conte, and was the record owner of 251 Rochelle Avenue, Rochelle Park, New Jersey—the epicenter of Defendants' fraudulent scheme.

107.   St. Irene is a person or practitioner within the meaning of the IFPA.

108.   Upon information and belief, in exchange for renumeration in the form of rent payments, St. Irene provided the necessary facilities that permitted Open MRI, Vestibular, Universal, and Doctor Defendants to perpetrate their scheme to defraud Aetna.

109.   Upon information and belief, given the relationship between St. Irene, Open MRI, Vestibular, Universal, and Dr. Stephen Conte, St. Irene knew of the fraudulent scheme against Aetna and consented to, and failed to disclose, the fraud being committed on its property.

110.   As a result of St. Irene's involvement in the fraud, Aetna has suffered damages including, but not limited to, all amounts paid by Aetna as a result of the

submission of false and fraudulent claims for reimbursement in excess of $580,000.00, costs of investigation, costs of suit, and attorneys' fees, all of which are specifically recognized as compensatory damages under the IFPA. *See* N.J.S.A. 17:33A-7. Aetna is also entitled to an award of treble damages under the IFPA. *Id*.

**WHEREFORE**, Aetna demands judgment in its favor and against St. Irene for all its damages, including all money paid as a result of Defendants' fraud, costs of suit and attorneys' fees, for treble damages under the IFPA, and for such other relief as the Court may determine.

**COUNT THREE**
**COMMON LAW FRAUD BY OPEN MRI, VESTIBULAR, UNIVERSAL, INTEGRATED WELLNESS, AND DOCTOR DEFENDANTS**

111.   Aetna repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 110 of this Complaint.

112.   Beginning in April 2020 and continuing through the present, Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants entered into an unlawful scheme to defraud Aetna by submitting fraudulent health insurance claims for services that were not rendered or were rendered unlawfully and which contained material misrepresentations concerning their entitlement to payment of benefits from Aetna.

113.   From April 2020 through November 2020, in violation of the IFPA, Open MRI, Vestibular, and Universal unlawfully performed rapid COVID-19 tests

without required CLIA licenses and collectively received payments from Aetna for these unlawful services. Excluding the amounts for specimen handling services described by CPT 99000 and/or 99001 and amounts for inflated billing for moderate and high-level E & M services, Aetna paid in excess of $71,805.43.

114.   Since at least April 2020, Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants knowingly and intentionally submitted and received payment from Aetna for specimen handling services described by CPT 99000 and/or 99001 which were not rendered, and collectively received payments from Aetna for over $13,500.00 for these unlawful services.

115.   Since at least April 2020, Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants knowingly and intentionally submitted upcoded claims falsely claiming they provided moderate or high-level evaluation and management services, which resulted in unlawfully inflated payments from Aetna of over $500,000.00.

116.   On July 27 and August 3, 2020, Dr. Salvatore Conte and Dr. Reiter formed Integrated Wellness and Universal for the sole purpose of spreading billings across multiple different entities in order to circumvent Aetna's fraud detection systems and to submit backdated billing in violation of the IFPA. Universal received payments from Aetna for over $10,000.00 for backdated bills.

117.   Aetna reasonably relied upon the fraudulent health insurance claims

submitted by or caused to be submitted by Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants and paid in excess of $580,000.00 on false and fraudulent claims for services that were not rendered or were rendered unlawfully.

118.  As a result of the aforementioned fraud, Aetna has suffered harm and damages including, but not limited to, all amounts paid by Aetna in reliance on the claim forms, costs of investigation, costs of suit, and attorneys' fees.

119.  Aetna is also entitled to receive punitive damages pursuant to N.J.S.A. 2A:15-5.10 since Defendants' fraudulent conduct was intentional, performed in bad faith, and done with actual malice.

**WHEREFORE**, Aetna demands judgment in its favor and against Open MRI, Vestibular, Universal, Integrated Wellness, Dr. Stephen Conte, Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, Dr. Pemberton, and Dr. Hermann jointly and severally, for all its damages, including all money paid as a result of Defendants' fraud, costs of suit and attorneys' fees, a preliminarily injunction to enjoin Vestibular from making any further transfers to Mr. Conte Jr. during the pendency of this action, and for punitive damages.

## COUNT FOUR
## NEGLIGENT MISREPRESENTATION BY OPEN MRI, VESTIBULAR, UNIVERSAL, INTEGRATED WELLNESS, AND DOCTOR DEFENDANTS

120.   Aetna repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 119 of this Complaint.

121.   Beginning in April 2020, Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants negligently submitted health insurance claims to Aetna for payment for services that were not rendered or were rendered unlawfully and which contained material misrepresentations concerning their entitlement to benefits.

122.   Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants had a duty to verify the accuracy and completeness of information contained on claim forms they signed, certified as true, and submitted to Aetna for reimbursement.

123.   Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants knew, or should have known, that the claims they submitted misrepresented the services rendered.

124.   Aetna foreseeably and reasonably relied upon the representations of Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants to its detriment in issuing payment.

125.   As a result, Aetna has suffered damages and irreparable harm including,

but not limited to, amounts paid for services not rendered or rendered unlawfully in excess of $580,000.00.

126.   The actions of Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants were the direct and proximate cause of the damages to Aetna.

**WHEREFORE**, Aetna demands judgment in its favor and against Open MRI, Vestibular, Universal, Integrated Wellness, Dr. Stephen Conte, Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, Dr. Pemberton, and Dr. Hermann for all its damages, including all money paid as a result of Defendants' conduct, costs of suit, and attorneys' fees.

## COUNT FIVE
## UNJUST ENRICHMENT BY OPEN MRI, VESTIBULAR, UNIVERSAL, INTEGRATED WELLNESS, AND DOCTOR DEFENDANTS

127.   Aetna repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 126 of this Complaint.

128.   As set forth above, Open MRI, Vestibular, Universal, Integrated Wellness, and Defendant Doctors engaged in a scheme pursuant to which they improperly and fraudulently billed for services not rendered or rendered unlawfully and retained the ill-gotten gains obtained therefrom.

129.   As part of this scheme, Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants intentionally submitted insurance claims for services which contained false and inaccurate statements which affected their right

to payment.

130.   Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants knew that the insurance claims for services contained false and inaccurate statements which affected their right to payment.

131.   As a result of improper billing by Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants, Aetna paid in excess of $580,000.00 to which they were not entitled.

132.   Aetna reasonably and foreseeably relied upon Defendants' misrepresentations.

133.   Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants negligent and proximately caused Aetna's damages.

134.   As a result of fraud and improper billing by Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants, they have been unjustly enriched.

135.   Aetna is entitled to receive punitive damages pursuant to N.J.S.A. 2A:15-5.10 since Defendants' fraudulent conduct was intentional, performed in bad faith, and done with actual malice.

**WHEREFORE**, Aetna demands judgment in its favor and against Open MRI, Vestibular, Universal, Integrated Wellness, Dr. Stephen Conte, Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, Dr. Pemberton, and Dr. Hermann for all

its damages, including all money paid as a result of Defendants' conduct, costs of suit, and attorneys' fees.

## COUNT SIX
## CIVIL CONSPIRACY BY OPEN MRI, VESTIBULAR, UNIVERSAL, INTEGRATED WELLNESS, AND DOCTOR DEFENDANTS

136.   Aetna repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 135 of this Complaint.

137.   As set forth above, Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants engaged in a coordinated scheme, with a common purpose, to improperly and fraudulently bill Aetna for services not rendered or rendered unlawfully.

138.   Open MRI, Vestibular, Universal, Integrated Wellness, and Doctor Defendants each contributed to the fraudulent scheme and committed overt acts in furtherance of that scheme.

139.   As a result, Aetna has suffered damages and irreparable harm including, but not limited to, amounts paid for services not rendered or rendered unlawfully in excess of $580,000.00.

**WHEREFORE**, Aetna demands judgment in its favor and against Open MRI, Vestibular, Universal, Integrated Wellness, Dr. Stephen Conte, Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, Dr. Pemberton, and Dr. Hermann for all its damages, including all money paid as a result of Defendants' conduct, costs of

suit, and attorneys' fees.

## COUNT SEVEN
## VIOLATIONS OF NEW JERSEY'S UNIFORM
## VOIDABLE TRANSACTION ACT BY VESTIBULAR

140.   Aetna repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 139 of this Complaint.

141.   New Jersey's Uniform Voidable Transaction Act, N.J.S.A. 25:2-10 to -36 ("UVTA") authorizes creditors to challenge and ultimately void the transfer of money, property, or assets by a debtor if the transfer effectively placed the money, property, or assets outside the reach of present and future creditors.

142.   Vestibular is a "debtor," as defined under the UVTA.

143.   Aetna is a "creditor," as defined under the UVTA.

144.   Vestibular has, and continues to, intentionally and systematically transfer money out of its accounts to pay the debts of Steven Conte Jr., an insider of Vestibular, on a monthly basis since July 2021.

145.   Steven Conte Jr. is not a physician.  Pursuant to N.J.A.C. 13:35-6.16, he has no right to own and control, or receive money from, Vestibular.

146.   Vestibular has been transferring its money and assets with an intent to hinder, delay, and defraud creditors like Aetna.

147.   Vestibular's systematic transfer of money and assets to Steven Conte Jr. has, or is likely to, make Vestibular "insolvent" as defined under the UVTA and

the New Jersey Attachment Act, N.J.S.A. 2A:26-1, *et seq.*

148.   Vestibular is not receiving *any* reasonably equivalent value for its transfer to Steven Conte Jr., who is a non-physician that cannot legally own, operate, or otherwise control a medical provider like Vestibular.

149.   Vestibular's continuing transfer of money and assets leaves it unable to pay its debts as they become due, including its debt to Aetna.

150.   As a direct and proximate cause of this fraudulent transfer, Aetna is incurring damages, both monetary and/or equitable in nature.

**WHEREFORE**, Aetna demands judgment in its favor and against Vestibular for all damages available under the UVTA, N.J.S.A. 25:2-10 to -36, and the New Jersey Attachment Act, N.J.S.A. 2A-26-1, *et. seq.*, and specifically seeks: (1) a preliminary and permanent injunction to immediately stop the transfer of assets from Vestibular to Conte Jr.; (2) imposition of a constructive trust over the funds Aetna paid to Vestibular; and/or (3) an attachment of Vestibular's assets sufficient to cover the damages Aetna suffered in this case.

## DEMAND FOR A JURY TRIAL

Plaintiffs Aetna Inc. and Aetna Life Insurance Company demand a jury trial on all Counts so triable.

November 17, 2021                              Respectfully submitted,

                                              FOX ROTHSCHILD LLP

                                       By: */s/ Benjamin H. McCoy*
                                              Benjamin H. McCoy
                                              Colin D. Dougherty
                                              Richard B. Lynn
                                              10 Sentry Parkway, Suite 200
                                              P.O. Box 3001
                                              Blue Bell, PA 19422-3001
                                              T: (610) 397-6500
                                              F: (610) 397-0450
                                              bmccoy@foxrothschild.com
                                              cdougherty@foxrothschild.com
                                              rlynn@foxrothschild.com
                                              *Counsel for Plaintiffs*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that the matter in controversy is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief.

November 17, 2021                                         Respectfully submitted,

                                                         **FOX ROTHSCHILD LLP**


                                                         By: */s/ Benjamin H. McCoy*
                                                              Benjamin H. McCoy
                                                              Colin D. Dougherty
                                                              Richard B. Lynn
                                                              10 Sentry Parkway, Suite 200
                                                              P.O. Box 3001
                                                              Blue Bell, PA 19422-3001
                                                              T: (610) 397-6500
                                                              F: (610) 397-0450
                                                              bmccoy@foxrothschild.com
                                                              cdougherty@foxrothschild.com
                                                              rlynn@foxrothschild.com
                                                              *Counsel for Plaintiffs*