NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| AETNA, INC. et al.,<br><br>                Plaintiffs,<br>    v.<br>OPEN MRI AND IMAGING OF ROCHELLE PARK, P.A. et al.,<br><br>                Defendants. | Civil Action No.: 21-20043<br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court by way of defendants Stephen J. Conte, D.O. ("Dr. Conte"), Eugene DeSimone, M.D. ("Dr. DeSimone," or, together with Dr. Conte, the "Doctor Defendants"), Open MRI and Imaging of Rochelle Park, P.A. ("Open MRI"), St. Irene Realty Corp. ("St. Irene Realty Corp."), Universal Wellness Medical, Inc. ("Universal"), and Vestibula Diagnostics, P.A. doing business as Vestibular Diagnostics, P.A.'s ("Vestibula") (collectively, the "Defendants")[1] motion to dismiss (ECF No. 36) plaintiffs Aetna, Inc. and Aetna Life Insurance Company's (collectively, the "Plaintiffs") Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Plaintiffs filed an opposition, and cross-moved for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 45. Defendants did not reply. The Court decides this matter without oral argument pursuant to Federal Rule of Civil

---

[1] Defendants Salvatore Conte, M.D. ("Dr. Salvatore Conte"), Raymond Reiter, M.D., Doney Jain, M.D., George Hermann, M.D., and Integrated Wellness Medicine, LLC ("Integrated") did not join the instant motion. Colin A. Pemberton, M.D. has been dismissed from this action.

[2] The Court notes that Defendants have characterized their motion as a "motion to dismiss counterclaims." ECF No. 36. However, as no counterclaims have been filed, the Court construes the motion as a motion to dismiss Plaintiffs' Complaint. *See EMC Outdoor, LLC v. Stuart*, No. 17-cv-5172, 2018 WL 3208155, at *1 (E.D. Pa. June 28, 2018) ("For the purposes of a Rule 12(b)(6) motion to dismiss, claims and counterclaims are treated equivalently, and the standards of review are the same." (internal quotations and citation omitted)).

Procedure 78. For the reasons set forth below, both Defendants' motion to dismiss and Plaintiffs' cross-motion for partial judgment on the pleadings are denied.

## I.     BACKGROUND[3]

This case arises out of allegations that Defendants engaged in fraudulent billing schemes to profit from administering to patients COVID-19 rapid tests.

### A.     Parties

Dr. Conte is a Doctor of Osteopathic Medicine, who practiced at Open MRI, Vestibula, and Universal. ECF No. 1 at ¶ 16. Open MRI and Vestibula are New Jersey professional associations and Universal is a New Jersey Corporation, all with the same principal place of business at 251 Rochelle Avenue, Rochelle Park, New Jersey. *Id.* at ¶¶ 13–15. Dr. Conte is the registered agent and president of Open MRI, the registered agent and founder of Vestibula, and principal and member of Universal's board of directors. *Id.* Corporate documents name Dr. Conte as an owner of these three entities. *Id.* at ¶ 16.

In addition to his association with these entities, during the relevant period, Dr. Conte owned, operated, and served as the registered agent for St. Irene Realty, a New Jersey corporation with the same principal place of business address as Dr. Conte's home address in Paramus, New Jersey. *Id.* at ¶¶ 25–26. St. Irene Realty is the owner of 251 Rochelle Avenue, Rochelle Park, New Jersey, the business address for Open MRI, Vestibula, and Universal. *Id.* at ¶ 26.

Among other Defendants relevant to the instant motion, Dr. DeSimone rendered medical services at Vestibula and Universal. *Id.* at ¶ 17. Moreover, Dr. Salvatore Conte provided medical services at Vestibula, Universal, and Integrated Wellness, a New Jersey limited liability company formed by Dr. Salvatore Conte in 2020. *Id.* at ¶¶ 18, 23.

---

[3] The following facts are accepted as true for the purposes of the motion to dismiss.

**B.     General Practices**

Plaintiffs allege that at the outset of the COVID-19 pandemic, Open MRI and Vestibula, radiology laboratories, began providing COVID-19 rapid tests to patients at their joint practice location at 251 Rochelle Avenue, Rochelle Park, New Jersey. *Id.* at ¶ 44. Plaintiffs assert that in taking a rapid test at Open MRI or Vestibula, a patient "would have their temperature taken, answer a series of screening questions regarding their symptoms, receive a nasal swab, and shortly thereafter be provided with test results. *Id.* at ¶ 45. Plaintiffs contend that the entire interaction would last "no more than a few minutes and involved minimal interaction with a physician." *Id.* at ¶ 46. Defendants allegedly charged their patients $35 for a rapid test, but then "submitted significantly higher charges" to Plaintiffs for reimbursement. *Id.* at ¶ 47.

In general, to be compensated by insurers like Plaintiffs for services such as administering a COVID-19 rapid test, healthcare providers like Defendants submit to insurers claims via standardized billing forms that use "numerical codes that describes the services for which the providers seek payment." *Id.* at ¶ 34. Plaintiff alleges it relies upon healthcare providers to accurately describe the services they render so payment can be appropriately disbursed. *Id.* at ¶ 35. And moreover, Plaintiffs contend that claims must "be certified as correct and complete and that the benefits being claimed be limited to charges actually incurred." *Id.* at ¶ 37 (citing ECF No. 1-3). Plaintiffs also assert that any provider submitting claims is required to be "appropriately licensed and credentialed to legally render, and personally render, the services being billed." *Id.* at ¶ 38.

Plaintiffs allege that to profit from the administration of COVID-19 rapid tests Defendants implemented four fraudulent schemes: 1) billing for COVID-19 tests performed without required licenses and authorizations; 2) billing for specimen handling services not rendered; 3) inflating

3

charges for services provided, a tactic known as "upcoding"; and 4) submitting claims through various businesses to avoid Plaintiff's fraud detection protocols.

### i. Licensing

Plaintiffs allege that Defendants submitted claims to Plaintiff for administering COVID-19 rapid tests, representing that Defendants were properly certified and licensed to provide such tests to their patients. *Id.* at ¶ 56. However, Plaintiffs assert that from April 2020 through at least September 22, 2020 Vestibula was not credentialed pursuant to the Clinical Laboratory Improvement Act of 1988, and thus was not authorized to administer COVID-19 tests. *Id.* at ¶ 57 (citing ECF No. 1-5). Similarly, Universal was purportedly unlicensed and unauthorized to provide COVID-19 tests from July 2020 through at least November 8, 2020. *Id.* at ¶ 61 (citing ECF No. 1-8). Moreover, Plaintiffs allege that Open MRI was at no times authorized to conduct COVID-19 testing and related services. *Id.* at ¶ 59. Plaintiffs assert that while these entities were without proper licensing, they nevertheless administered COVID-19 tests and improperly submitted claims to Plaintiffs to recover payment for this service. Specifically, Plaintiffs contend that Vestibula billed Plaintiffs $65,000 (*id.* at ¶ 58 (citing ECF No. 1-6)), Open MRI billed Plaintiffs over $6,000 (*id.* at ¶ 60 (citing ECF No. 1-7)), and Universal billed Plaintiffs at least once for administering COVID-19 rapid tests (*id.* at ¶ 62 (ECF No. 1-9)).

### ii. Billing for Specimen Handling

Plaintiffs further assert that, in all of their claims for COVID-19 rapid testing, Defendants also billed Plaintiffs for "specimen handling," which "involves the handling of test samples for transfer to a laboratory." *Id.* at ¶¶ 65–66. However, according to Plaintiffs, rapid COVID-19 tests do not require specimen handling because rapid tests are processed in the location at which they are administered, and present no need to transfer specimens to a different location for further

analysis. *Id.* at ¶¶ 66–67. Thus, by billing Plaintiffs for specimen handling, Plaintiffs assert that Defendants fraudulently received thousands of dollars for services they did not perform. *Id.* at ¶ 68 (citing ECF No. 1-10)).

### iii. Upcoding

In addition to allegedly billing for services not rendered, like specimen handling, Plaintiffs also contend that Defendants "upcoded" their claims—that is, Defendants allegedly inflated their bills by submitting claims requesting compensation for more involved medical services than were actually provided when administering a COVID-19 rapid test. *Id.* at ¶¶ 69–73; ECF No. 1-4. Plaintiffs allege that due to this upcoding, Plaintiff overpaid Defendants in excess of $500,000 for claims misrepresenting the services Defendants rendered. ECF No. 1 at ¶ 75.

### iv. Avoiding Detection by Plaintiffs' Fraud Department

Last among the purported fraudulent schemes, Plaintiffs allege Defendants submitted claims from Universal and Integrated to conceal their improper billing practices. Generally, Plaintiffs assert that insurance providers, like Plaintiffs, can identify possible instances of billing fraud if a healthcare provider submits "higher-than-normal claims for a given service." *Id.* at ¶ 77. According to Plaintiffs, to avoid detection, healthcare providers dilute the number and value of submitted claims from any one provider by spreading them across multiple business entities. *Id.* at ¶ 78. That way, Plaintiffs allege, any one entity will report normal levels of billings and will not be flagged for irregular claim submission practices. *Id.*

Plaintiffs allege this is what occurred here. *Id.* at ¶ 79. They contend that Defendants formed Universal and Integrated, and submitted claims from those entities, "to spread billing across multiple [entities] to circumvent [Plaintiff's] fraud detection systems." *Id.* at ¶ 82.

Moreover, Plaintiffs allege that Universal and Integrated's billing practices "mirrored the fraudulent billing practices of Open MRI and Vestibula." *Id.* at ¶ 83.

### C. Procedural History

Plaintiffs initiated this action on November 17, 2021 alleging claims for: 1) insurance fraud by Open MRI, Vestibula, Universal, and the Doctor Defendants, in violation of New Jersey's Insurance Fraud Prevention Act, N.J.S.A. §§ 17:33A-1–130; 2) aiding and abetting the commission of insurance fraud by St. Irene Realty; 3) common law fraud by Open MRI, Vestibula, Universal, and the Doctor Defendants; 4) negligent misrepresentation by Open MRI, Vestibula, Universal, and the Doctor Defendants; 5) unjust enrichment by Open MRI, Vestibula, Universal, and the Doctor Defendants; 6) civil conspiracy by Open MRI, Vestibula, Universal, and the Doctor Defendants; and 7) violation of the New Jersey Uniform Voidable Transaction Act by Vestibula, pursuant N.J.S.A. §§ 25:2-10–36.

## II. LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted). In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

### III. DEFENDANTS' MOTION TO DISMISS

Defendants challenge the sufficiency of Plaintiffs' Complaint on two grounds. First, as it relates to Plaintiff's fraud-based claims—insurance fraud, common law fraud, and negligent misrepresentation—Defendants argue that Plaintiffs' allegations are not pleaded with the specificity required by Federal Rule of Civil Procedure 9(b).[4] ECF No. 36 at 6–10, 12–16. Further, Defendants argue that Plaintiff has not pleaded that St. Irene Realty "had knowledge that the medical defendants alleged conduct constituted fraud," or that it "gave substantial assistance or encouragement to the [Doctor Defendants] to commit fraud." *Id.* at 10. In the alternative, should the Court deny their motion, Defendants request that Plaintiffs submit a more definitive statement of facts pursuant to Federal Rule of Civil Procedure 12(e). *Id.* at 10–11. The Court will consider Defendants' arguments in turn.

#### A. Fraud-Based Claims

Defendants argue that Plaintiffs' fraud-based claims fail to meet Rule 9(b)'s heightened pleading standard because they fail to explain how any of Defendants' services were fraudulent, and to the extent Plaintiffs do reference particular components of a scheme, those references are factually inaccurate. For example, regarding upcoding, Defendants argue that Plaintiffs have included no facts as to how much time the Doctor Defendants spent with each patient or what services were provided in each encounter, and thus have not explained how bills submitted to Plaintiffs reflecting charges for services in addition to a COVID-19 rapid test are fraudulent. *Id.* at 9. And regarding factual inaccuracies, by way of example, Defendants argue that Plaintiffs are

---

[4] Where, like here, a negligent misrepresentation claim is premised on fraudulent conduct, the claim is subject to Rule 9(b)'s heightened pleadings standards. *Riachi v. Prometheus Group*, No. 16-cv-2749, 2016 WL 6246766, at *5 (D.N.J. Oct. 25, 2016) (citing *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85–86 (3d Cir. 2015)).

7

incorrect that the Defendants were not properly authorized to offer and administer COVID-19 testing services. *Id.* at 9, 13–14. For the reasons explained below, the Court finds Defendants' contention that Plaintiffs' fraud-based claims do not comply with Rule 9(b) unavailing.

Under New Jersey law, to establish a common law fraud claim, a plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other [party] rely on it; (4) reasonable reliance thereon by the other [party]; and (5) resulting damages." *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 368 (N.J. 1997)). Likewise, to adequately plead a claim for negligent misrepresentation, a plaintiff must show: "(1) an incorrect statement, (2) negligently made and (3) justifiably relied on, [which] (4) may be the basis for recovery of damages." *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 616 (D.N.J. 2013) (citing *Kaufman v. i-State Corp.*, 754 A.2d 1188, 1196 (2000)), *reconsideration granted on other grounds*, 2013 WL 6865083 (D.N.J. Dec. 30, 2013). In contrast to common law fraud and negligent misrepresentation, the Insurance Fraud Prevention Act "does not require proof of reliance on the false statement or resultant damages, nor proof of intent to deceive." *LM Ins. Corp. v. All-Ply Roofing Co., Inc.*, No. 14-cv-4723, 2019 WL 366554, at *12 (D.N.J. Jan. 30, 2019) (citations omitted). Instead, to sustain a fraud claim under the Insurance Fraud Prevention Act, a plaintiff must only allege: "(1) knowledge, (2) falsity, and (3) materiality." *Id.* (citation omitted).

Plaintiffs' fraud-based claims are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a party bringing a fraud claim "state with particularity the circumstances constituting the fraud or mistake." To satisfy Rule 9(b), a plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or

8

some measure of substantiation into a fraud allegation." *Priscaspian Dev. Corp. v. Martucci*, 759 F. App'x 131, 135 (3d Cir. 2019) (internal citations omitted). Stated otherwise, a plaintiff must support its fraud allegations by demonstrating the "who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). However, a plaintiff need not allege every material detail so long as it pleads the circumstances of the fraud with sufficient particularity to place a defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alternation in original) (citation and quotation marks omitted).

Here, the Court finds that Plaintiff has adequately alleged its fraud-based claims with the requisite specificity by asserting that Defendants engaged in a series of fraudulent schemes to induce Plaintiffs to pay Defendants for services Defendants were not authorized to render or were not rendered at all. ECF No. 1 at ¶¶ 56–82. Specifically, between approximately April 2020 through November 2020, Plaintiffs allege that the Doctor Defendants administered COVID-19 rapid tests at facilities, including Open MRI, Vestibula, and Universal, which had not obtained the proper authorization or licensing pursuant to the Clinical Laboratory Improvement Act. *Id.* at ¶¶ 57–62. In connection with administering rapid COVID-19 tests, Plaintiffs allege that Defendants "upcoded" their bills, representing that while patients were seen for a rapid COVID-19 test, they received a complex medical examination, and that their test specimens were also transferred to a different laboratory for analysis. *Id.* at ¶¶ 64–72. Plaintiffs allege that these services—complex medical evaluations and off-site specimen analysis—are not necessary to administer and process a routine COVID-19 rapid test. *Id.* Further, Plaintiffs allege that the Doctor Defendants formed multiple Defendant businesses, including some at the same address, and submitted claims across all those businesses to avoid Plaintiffs' fraud detection protocols. *Id.* at ¶¶ 13–18; 23–26; 76–82.

9

Moreover, Plaintiffs allege that Defendants submitted these claims knowing that they were false, and further knowing that Plaintiffs would rely on Defendants' representations regarding what services were rendered as being true and accurate. *Id.* at ¶¶ 75; 99–100; 114–115; 123. Plaintiffs also allege that they compensated Defendants based on the services listed in the fraudulent claims. *Id.* at ¶ 75.

To corroborate these allegations, Plaintiffs point to Clinical Laboratory Improvement Act certificates which demonstrate that certain Defendant entities were not licensed to perform COVID-19 rapid tests during the alleged period (ECF Nos. 1-5, 1-8); a purportedly representative claim submitted by Dr. DeSimone and Vestibula, charging Plaintiffs $890 for a complex medical examination, specimen handling, and a COVID-19 rapid test (ECF No. 1-4); claims data for the claims at issue in this case (ECF Nos. 1-6, 1-7, 1-9); and corporate records (ECF No. 1-11).[5]

These allegations establish each element of Plaintiffs' fraud-based claims,[6] and, taken together, are sufficiently particular to place Defendants on notice of the conduct giving rise to Plaintiffs' claims, in satisfaction of Rule 9(b)'s heightened pleading standard. *Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Horizon Blue Cross Blue Shield of N.J.*, No. 21-cv-10991, 2022 WL 4354654, at *7 (D.N.J. Sept. 20, 2022); *Aetna v. Mednax, Inc.*, No. 18-cv-2217, 2018 WL 5264310, at *7 (E.D. Pa. Oct. 23, 2018) ((finding that allegations describing a pattern of

---

[5] As Plaintiffs have attached these exhibits to their Complaint, the Court may consider their content at the motion to dismiss stage. *Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[6] Defendants argue that Plaintiffs' Insurance Fraud Prevention Act claim is subject to dismissal because Plaintiffs have failed to allege that they relied on Defendants' representations or that Defendants had the requisite "mens rea" to commit insurance fraud. ECF No. 36 at 16. Both assertions are unavailing. As noted above, a plaintiff must plead neither reliance nor proof of intent to sustain an Insurance Fraud Prevention Act claim. *LM Ins. Corp. v. All-Ply Roofing Co., Inc.*, 2019 WL 366554, at *12.

healthcare billing fraud sufficient to satisfy Rule 9(b)) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155–56 (3d Cir. 2014))).

And further, to the extent that Defendants argue that Plaintiffs' allegations are nevertheless insufficient because they are factually incorrect (*see, e.g.*, ECF No. 36 at 12–13 (disputing Plaintiffs' characterization of the corporate structure of the Defendant entities); 13–14 (asserting that the Defendants were properly licensed to administer COVID-19 tests); 14–15 (arguing Defendants did not "upcode" their claims, but instead followed guidance from the American Medical Association); 15–16 (contending that Plaintiffs cannot show Defendants knew they were committing insurance fraud because Defendants relied "on the advice of competent authority")), that argument without merit. Resolving any dispute of fact at the motion to dismiss stage is inappropriate, as the Court must take Plaintiffs' allegations as true and read the allegations in the light most favorable to Plaintiffs. *Bagic v. Univ. of Pittsburgh*, 773 F. App'x 84, 87–89 (3d Cir. 2019); *NJSR Surgical Ctr., LLC v. Horizon Blue Cross Blue Shield of N.J.*, 979 F. Supp. 2d 513, 524–25 (D.N.J. 2013) (finding factual issues inappropriate for resolution on a Rule 12(b)(6) motion to dismiss).

Accordingly, Defendants' motion to dismiss for failure to satisfy Rule 9(b) is denied.

### B. Aiding and Abetting

Defendants argue that Plaintiffs have not alleged that St. Irene Realty is liable for aiding and abetting the purportedly fraudulent billing scheme because Plaintiffs have failed to assert facts demonstrating that St. Irene Realty knew of the fraud or assisted in the commission of the fraud. ECF No. 36 at 10.

In New Jersey, aiding and abetting liability exists where there is "(1) commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor

knowingly and substantially participated in the wrongdoing." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003) (citations omitted) (applying New Jersey law); *St., Dep't of Treasury, Div. of Inv. ex. Rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 782 (N.J. Super Ct. App. Div. 2006).

To support its claims, Plaintiffs allege that St. Irene Realty received renumeration in the form of rent payments in exchange for providing the facilities necessary for the other Defendants to perpetuate the billing scheme. ECF No. 1 at ¶ 108. Moreover, Plaintiffs allege that St. Irene Realty knew it was participating in the scheme. Specifically, Plaintiffs asserts that Dr. Conte owned St. Irene Realty, which, in turn, owned 251 Rochelle Avenue, Rochelle Park, New Jersey. Open MRI, Vestibula, and Universal, also owned by Dr. Conte, all list 251 Rochelle Avenue, Rochelle Park, New Jersey as their principal place of business. *Id.* at ¶ 109. Plaintiffs assert that this corporate structure demonstrates that St. Irene Realty knew of the fraudulent scheme, but despite that knowledge, "consented to, and failed to disclose, the fraud being committed on its property." *Id.*

In determining whether these allegations are sufficient to survive a motion to dismiss, the court finds the reasoning enumerated in *Open MRI and Imaging of RP Vestibular Diagnostics, P.A. v. Horizon Blue Cross Blue Shield of New Jersey* instructive. 2022 WL 4354654, at *8. There, a different insurance provider brought claims against Open MRI, Vestibula, Universal, St. Irene Realty, Dr. Conte, and Dr. DeSimone, among others, for fraud-related claims, including aiding and abetting as to St. Irene Realty, in connection with the types of billing schemes alleged in the instant action. *Id.* at *1–*5. Presented with aiding and abetting allegations similar to those asserted here, the court determined that "based on the intertwined business . . . relationships between St. Irene Realty, Open MRI, Vestibula, Universal and Dr. Stephen Conte [], and because [the

insurance provider] has sufficiently pleaded the underlying fraudulent scheme," Plaintiffs' aiding and abetting claim could proceed. *Id.* at *8. In this matter, Plaintiff has asserted the purported connections among Defendants and described with specificity the underlying schemes. Therefore, they have sufficiently pleaded their aiding and abetting claim. As such, Defendants' motion as it pertains to this claim is denied.

### C. Federal Rule of Civil Procedure 12(e) Application

In the alternative, Defendants request that this Court order Plaintiffs to submit a more definitive statement of facts pursuant to Federal Rule of Civil Procedure 12(e). ECF No. 36 at 10–11. A party may move for a more definite statement under Rule 12(e) where the pleadings are "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. Pro. 12(e). The purpose of Rule 12(e) is not to "'provide greater particularization of information alleged in the complaint,'" but is rather to "address an unintelligible complaint." *Beom Su Lee v. Karaoke*, No. 18-cv-8633, 2019 WL 2537932, at *11 (D.N.J. June 19, 2019) (quoting *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 737 (D.N.J. 2008)). Here, as explained above, Plaintiffs have alleged particularized facts in support of the disputed claims. Accordingly, the Complaint is not "unintelligible," and Defendants Rule 12(e) motion is denied. *Gov't Emps. Ins. Co. v. Koppel*, No. 21-cv-3413, 2021 WL 3662364, at *4 n.5 (D.N.J. Aug. 17,2021) (finding that Rule 12(e) motions are "unnecessary where . . . [p]laintiffs have provided extensive factual support for their claims").

### IV. PLAINTIFFS' CROSS-MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Plaintiffs cross-move for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), asking the Court to find that Defendants performed COVID-19 rapid tests

13

without the proper license or authorization. ECF No. 45 at 26–30. Rule 12(c) states, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Pleadings are considered closed "after the complaint and answer are filed, along with any reply to additional claims in the answer." *Horizon Healthcare Servs., Inc. v. Allied Nat. Inc.*, No. 03-cv-4098, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007) (citations omitted). Here, the pleadings are not closed. Because Defendants' motion to dismiss is denied, they will have an opportunity to answer Plaintiffs' Complaint. Accordingly, at this time, Plaintiffs' 12(c) motion is premature, and, as a result, it is denied. *Hunter Douglas N.E., Inc. v. Acme Window Coverings, Ltd.*, No.-08-cv-4145, 2009 WL 10728642, at *5 (D.N.J. Mar. 24, 2009).

## V.     CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Complaint is denied and Plaintiffs' cross-motion for partial judgment on the pleadings is also denied. An appropriate Order accompanies this Opinion.

DATED:  November 23rd, 2022

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**
